Case No. 20-1599, NRA Anti-Vibrational Rubber Parts Cases-End Payor Actions, argument not to exceed 15 minutes per side. Mr. Tripp, you may proceed for the appellants. Good afternoon, counsel. Judge Batchelder is participating in today's oral arguments, but she is doing it by audio only. Counsel for appellants, you may proceed. Yeah, Your Honor, may it please the court, I'm Zach Tripp for the defendant appellant manufacturers. If I could reserve three minutes of time for my rebuttal. Very well. So, Your Honors, the only question in this case is whether the word direct in the end payer class definition, whether it just means direct, you know, ordinary meaning, nothing special. Because if it does, then the three Anderson plaintiffs, the DAP LEs here, and they are class members, they're ordinary end payer consumers, and they are members of the class and they can't sue us again. And if I could, I'd really just like to make two points about the class notices and the releases, which are just fundamentally incompatible with their argument that direct is actually an oblique reference to some arcane legal fiction. So, with the notices, right, this is a class, the end payer class, the class directed ordinary consumers, which is, I think, in and of itself, just like a heavy weight in favor of just ordinary meaning. But if an ordinary person was wondering, am I a class member or not? The natural place for them to look would be the class notices. And it answers the question in no uncertain terms, it defines indirectly, it says, indirectly means you bought the vehicle replacement part from someone other than the manufacturer of the part. That's our test. And I think even maybe more important is what the class notices don't say, because the plaintiff's theory is that you are, there's an implied carve out where if you purchased from a retail subsidiary via a purely internal supply chain, then you're carved out of the class. That's hard even to say, but if that were right, there would have to be like a footnote or an asterisk or something in the class notice telling ordinary people that, telling ordinary people that if they bought, they have to identify the subsidiary so that an ordinary person who got one of these parts installed at their local Firestone, they could know that, hey, I might need to ask a couple more questions to figure out if I'm a class member or not. And it's just not there. And it's not there because it just doesn't matter. I think the releases are also very powerfully in our favor. The releases are written really broadly. And what they, so they released basically any claim that any class member could may ever possibly have, but they're subject to eight express exceptions. And really the key point here is that there is no ninth exception, because that's what the plaintiffs are asking for. They are asking for an additional exception, basically saying that indirect purchasers nonetheless retain the ability to sue for damages under the federal antitrust laws pursuant to an exception to the rule of Illinois BRIC. And it is just not there. And I think there's sort of two things that are really, really powerful about that. One is you already have eight exceptions, right? So you don't just as ordinary textual principles, you should not be reading a ninth one into the contract, especially a sophisticated contract like this. But I think another one that's very powerful is that the last exception is directed at exactly the same subject. The last exception, the eighth one says that indirect purchaser class members retain the follow the rule of Illinois BRIC. And the only thing that that can mean is that when an indirect purchaser class member invokes an exception to the rule of Illinois BRIC, so they can sue for damages in those states, because that's the only way they can sue for damages in those states, that they are still a class member. Otherwise that eighth exception is just completely redundant and superfluous. It doesn't make any sense. And it wouldn't make any sense why it refers only to state law claims and not also to federal law claims. I think really those things like the ordinary meaning, the notices, and then the releases are just fatal to the other side's position. I think a big part of the plaintiff's argument here is a contention that the term direct is actually just like a term of art. I think for the reasons I was just discussing, honestly, you don't even need to get into that. You can just take this as ordinary meaning, ordinary contract interpretation and be done with it. But even if you were to think about this as a term of art, I think, honestly, we still win. Because I think one way to think about that would be that it's incorporating whatever the terms direct and indirect mean under American antitrust law. And if that's what it does, we win. Because Apple versus Pepper, the Supreme Court stated our rule that the absence of an intermediary is dispositive. It's undisputed here that there's an intermediary. And I think maybe the other way of thinking about it, which the plaintiffs have been pressing, is as maybe a little more like usage in the field, the way antitrust lawyers speak. And I think on that, it would really be on the plaintiffs to come forward with evidence that that's the way antitrust lawyers speak in derogation of ordinary usage. And they haven't come close to making that showing. They have two district court opinions in the last 40 years that use the term direct the way they want to use it. And I think we have basically everything else. We have Illinois BRIC itself, the Supreme Court in Kansas versus Utilicorp, this court in the Jewish Hospital case, the Legion Treatises. I mean, the normal way that people talk about this in the field is to say that they are indirect purchasers and they're invoking an exception to the rule of Illinois BRIC so they can sue for damages. But it's not a legal fiction, right? It's an exception to a rule of proximate cause of damages that damages normally stop at the first step. Supreme Court in Illinois, there is an exception to that rule here, but it's not a legal fiction. It doesn't transform them into something they are not. Are we interpreting the settlement agreement under Michigan law? Yes. Yes, Your Honor. What are we to make of the fact that Bridgestone did not give notice in the direct action that the plaintiffs were bound by the settlement agreement? Yeah, I honestly don't think there's much to make of that. We're really just talking about a six month window here between December 2018 and May 2019 when we first told them. So the earliest we could have filed this motion was in December 2018 when all the judgments were in place because you can't move to enforce unless you have judgments. And that's when we got our last one. And basically at that point, the motion to dismiss proceeding was already really far along. We've been litigating that for a year and a half. And that was a completely independent freestanding basis for knocking out the whole suit. In all candor, I think we thought we were going to win that. We still think we were right. I mean, we'll take it as a given for purposes of this appeal that they have a cause of action for damages. But basically a judgment was made to see that to the end without injecting a separate and independent basis. The district judge was concerned about that. And was she saying that you should have amended your motion to dismiss to specify the settlement agreement? Or what was her problem? I'm honestly not entirely sure. I mean, we had to file it in the end payer docket because there was exclusive jurisdiction under the agreements. There's exclusive jurisdiction there. I think she was getting at us giving them notice in advance of what we were going to do if we lost the motion to dismiss. But I think in any event, it really just doesn't shed any light on the meaning of the word direct in the class definition, which is really the key point. This time in, whatever it is, the meaning of direct was set when we entered into the agreement well in advance the settlement. And I think maybe one critical point here is that the plaintiffs went into the suit eyes wide open to the fact that they're named plaintiffs fit to a T, the literal class definition in the end payer class. They're just ordinary end payer consumers. But they didn't file an objection to the settlement. They didn't say, hey, your releases, you only have eight releases. Would you please add a ninth? I would like to preserve my ability to sue for damages under federal law. They didn't come forward and do that. They didn't opt out. They didn't sue under state law. And so I think just under very ordinary principles of class litigation or rule 23, their claims have just been released. And that's the end of it. Was there any mention of Illinois brick and the litigation and the first litigation before the settlement occurred in any of the briefing or motions or you mean Illinois brick in general? Yeah. Just whether that distinction between the exception and the rule of Illinois brick, was that did that play out in any way in the first action such that it would have been in the minds of the settlers to be aware of that distinction? Of the ownership and control piece of it? To my knowledge, the ownership and control exception did not come up in the end payer piece of it. I mean, I think really one of the oddities of this case is that one of the oddities here is that this was a case where, of course, there are actual direct purchasers, companies like Honda, Nissan, Toyota, and none of them came forward for the entire duration of the limitations period. This is in striking contrast to 29 other cases in this MDL where actual direct purchasers came forward and brought class actions, obtained some very significant recoveries. But for these little rubber parts that we're talking about here, they didn't do it. They never came forward. And instead what happened is that the plaintiffs here came up with this admittedly very creative theory for why they can rely on illegal fiction to pull themselves out of the first class of people who look just like them and instead stand in the shoes of these companies that they don't even remotely resemble. And so it's a very the most straightforward way out of this is just direct means direct. They purchased through an intermediary. Their claims have been released and that's really it. If there's no further questions, I'll just reserve the balance of my time. Very well. Any further questions at this time, Judge Batchelder? No. Judge Bush? No. All right. Counsel for Appali? David Fink appearing on behalf of Appali. I think we heard everything in the last comment or the last set of comments from counsel. What we heard was what he refers to as the actual direct purchasers didn't come forward. That is exactly what we're looking at here. Defendants don't accept the court's ruling on their prior motion to dismiss. We represent the actual direct purchasers. Our clients directly purchased parts, anti-vibration rubber parts, from Firestone dealerships. And those Firestone dealerships, as we allege, clearly were owned or controlled, in this case actually owned, by an entity that was owned by Bridgestone, a conspirator in this price-fixing conspiracy. We are direct purchasers. They just don't like that we're direct purchasers. And so they filed this motion. But let's be clear, they didn't think that they were getting a release of the direct claims initially. It was a surprise to everybody. This was all an afterthought. And it doesn't work. Let me back up, though, and say a little bit about the case. Well, Mr. Fink, before you do, are you in fact a direct purchaser, or are you treated for purposes of standing as if you were a direct purchaser? Well, we are a direct purchaser. Well, you didn't purchase direct. You purchased from a subsidiary to a subsidiary. I mean, there's at least two or three steps removed, I mean, from directness. But I read that footnote in the Illinois Brick as saying, for standing purposes, we will treat such a person or such an entity as if they were a direct purchaser. But I don't see it as holding that you are a direct purchaser. Am I reading that wrong? Well, the way we read it, and it's the way we argued it in the motion to dismiss, and the way the judge ruled on it in the motion to dismiss, and the way in this, which was the appeal of which was not accepted by the Sixth Circuit, is we directly purchased from an entity that was part of the conspiracy. Now, in this case, they were part of the conspiracy because they were owned or controlled by the actual conspirator. But if you did not have that rule, then it would be incredibly simple. All any price fixer would have to do is everybody gets together, they fix the price, and they say, okay, now set up subsidiaries and sell through the subsidiaries because there's no federal liability. And that's why when you purchase directly, again, we didn't buy from some third party. We didn't purchase from an independent party that had purchased these parts. That would make us indirect. We purchased directly from the company. It happens the company had these subsidiaries, but it was from the company that was the conspirator. And as Judge Bottani looked at it, she acknowledged that some courts refer to these as indirect purchasers purchasing with an exception. Others refer to them as deemed direct, and others just call them direct purchasers. There's a lot of different nomenclature for it, but the nomenclature doesn't drive the outcome. And I want to point out- Isn't the outcome though for standing purposes of bringing an antitrust action? And I mean, the Illinois BRIC says that indirect purchasers as a general rule cannot sue. However, there is this one exception we recognize in this footnote, which would allow them standing to assume. But the issue here is the contract, the settlement agreement that under Michigan law, does indirect purchaser mean what we think it actually does mean indirect? Does indirect mean indirect as opposed to a standing term? I mean, what am I missing here? Well, I think the first thing, and I would never suggest, Your Honor, that you're missing something. Please don't, but okay. But the way we look at it differently, let's start with this. This case arose from an MDL, as the court knows, that Judge Bottani has been handling, or had been handling, I should say, for several years before her retirement. She presided over the settlement. The settlement went through all of the Rule 23 requirements, all the detailed requirements for the settlement could be approved. And the final was, after she followed all those rules, she retained jurisdiction and she interpreted this. She made the determination. So the review is- So she can't make a mistake? Is that it? Because she had the case all the way along? Where does that go? She could make a mistake, but she's entitled to deference from this court. Her rulings are entitled to deference from this court. She has to contract interpretation? Is that it? Well, it depends on what one is interpreting. Actually, to the extent that what she decided was an issue of fact, and I believe it was, to the extent it was an issue of fact, it's even a higher level of deference, as was determined in the same case that we cite that references the standard thermoscan, the abuse of discretion standard, says if it's a question of fact, it has to be clearly erroneous. Certainly, it's not clearly erroneous in this case. Let me just point out, in the settlement agreements, there are exclusions. One of the exclusions is for persons who purchased anti-vibration rubber parts directly. And another exclusion is for any claims made by direct purchasers of anti-vibration rubber parts. That's what our case is. Our case is the class of direct purchasers. That's what our class is. And there's never been a question about that. There was never an issue about what class we were. I mean, it's not even ironic. I shouldn't say it's ironic. It is rather persuasive that the defendants did not assert this defense until after they lost on the motion to dismiss and after this court refused to review that determination. And the reason that's significant is that they filed multiple briefs, and not only briefs, but their answers that release because they didn't think there was a release. This was a gotcha moment. Somebody was sitting in their law office in New York late at night one day and said, oh, wait a minute. Maybe we could say this. Certainly, when the end payer plaintiffs got together and negotiated the settlement, when the mediators dealt with it, I don't know how they settled it. I'm assuming it was with mediators, but I wasn't involved. Maybe they didn't. But the point is that when the settlement was reached, they didn't notify the defense. They didn't notify the direct purchaser plaintiffs. And after they reached the settlement, they didn't tell the court. And I think the court asked, why was it relevant to Judge Batani? Judge Batani has been handling this case. This litigation goes back to 2016. And Judge Batani has been handling it throughout that period. Nobody came forward after they know until November of 2018, which is why Bridgetone didn't give notice. No, that's not right. The last of the defendants might have settled late in 2018. But the other settlement agreements, we've got all the dates set forth in our briefing, but the other settlements were finalized long before that. And they never came forward to say it. They never came forward to say because these are direct purchaser claims. They are the claims of direct purchasers, people who purchased directly from the corporation or its subsidiary. Why did they have to tell your client about the settlement? Where's the duty to tell your client about the settlement? No, it goes to their own interpretation of their settlement. If the settlement ended the claims, then they could walk away from the litigation. So you have their own interpretation of the case. They knew they hadn't settled these claims. If they thought they'd settled the claims, they would have notified the court claims are done. We don't have to keep coming back. We don't have to deal with discovery. We don't have to deal with this case. We're done because we've settled. But they didn't. They kept litigating. They kept litigating on these other theories because they didn't think they'd settled out the claims. That's why it's relevant. The relevance is these people knew. We all knew that the end payer claims were separate from the direct purchaser claims. It's a whole different world. It's a whole different set of claims. We had federal claims litigated in federal court. They had state law claims litigated in state court. And they say over and over again that $80 million, $80 million, $80 million should buy them peace. $80 million should buy them an end to the litigation. And they even say at one point that the settlements advance the purpose of compensating alleged victims. No. Let me ask you, in this current, in this direct purchaser lawsuit, are there plaintiffs who bought directly from Bridgestone as opposed to the subsidiary of Bridgestone? The class includes them. Absolutely. The class includes them. You're a subset of the plaintiffs. You're a subset that bought from a subsidiary of Bridgestone, your group, the Anderson plaintiffs. Well, the Anderson plaintiffs, all of the class representatives in this case, all of the class representatives, in fact, purchased parts from Firestone stores. Yeah. Couldn't you claim what Bridgestone did in terms of those who purchased directly from Bridgestone and your clients who purchased from Firestone? Couldn't that just be a first line of defense? And if that doesn't succeed, then come back and go after the subset based on the settlement theory. I don't understand your point about the gotcha. I'm trying to understand that because it seems like logically you might want to go ahead and try to knock out all the plaintiffs first through a motion, a global motion. Well, all the plaintiffs would have been knocked out because all of the class representatives purchased from a retail store. All of the class representatives did. So if you get out the class representatives, you get out the class. It serves the same purpose. Yeah. Yeah. So I'm not sure. It seems like you're both going back to your gotcha point, but it seems like each of you are claiming gotcha on the other side. So I'm not sure that that really solves the question here. Sorry to distract you. I was just thinking about that. No, that doesn't distract me. I was thinking about, I'm thinking about what the court is indicating. The relevance of our argument, it's not certainly they have a right to litigate in any order that they want to. But if this was true, if it were true that they had already released the claims, they don't have to go through the complicated issues involved in the motion to dismiss. All they had to do was say case is over. You've released your claims. Release is very simple. But we didn't release our claims because we are direct purchasers. We're not indirect purchasers. They suggest that it's a it's just a dictionary definition of direct or indirect. Well, you go to the dictionary. It's not going to it doesn't talk about sales and purchases. Antitrust law does antitrust cases do in an antitrust law. We all know that these are direct purchasers. I would say this, though, if you look at the actual definition, their definition refers to the purchases from the manufacturers. Well, that's not defined either. Can't manufacturers include? Why wouldn't a purchase from a manufacturer include the purchase from the manufacturer's subsidiaries? I would think it would. And there's no reason to doubt that it would have in this case. And in the end, Judge Botani had to had to wrestle with this and evaluate this. And Judge Botani evaluated. She found these are direct purchasers. Now, she used the word deemed direct the phrase that they were deemed direct. They are deemed direct purchasers. But for purposes of the settlement agreement, why aren't they also deemed direct? It's settlement agreement in the same case. So. The. In the end. What we really hear today is that defendants don't like the outcome on the motion to dismiss, and we understood that we understand that they've got this other creative theory, but every aspect of this theory really does revisit the law of the case, which was already determined by the court and was known at the time of the settlement agreement when they reached when they entered into some of these settlement agreements. I see that my time is up. All right. Thank you, Mr. Fink. Any further questions? Judge Batchelder? Judge Bush? No. All right. Understanding there's three minutes of rebuttal trip. Yeah, just a few quick points. I think, you know, we are taking it as a given. I think, as Judge Griffin's questions picked up on, we're taking it as a given that they could have standing to sue for damages, you know, would have it as individuals under the antitrust laws under the ownership and control exception. The only question here is one of construction. It's what do you make of this, the settlement agreement under Michigan law? That is a pure question of construction. It is reviewed de novo. There is no fact that anybody has identified that could possibly bear on, you know, clear error. Does the settlement agreement use the term deemed indirect, or does it just say indirect? It just says indirect. All right. Judge Batani qualified it by deemed indirect, which means to me that's a legal fiction, and for purposes of standing, she's going to deem them as if they were direct purchasers. But the settlement agreement, if it doesn't use that same term, I think that's important. I mean, that's exactly our position, and I think the notices and the releases completely confirm it. I mean, I haven't heard anything from the other side talking about ordinary meaning. They admit that they did not actually purchase from the manufacturers. Again, no response on the notices, no responses on the releases. I think that's really all you need to know to decide the case. I guess one last point, just taking a step back, courts should be really cautious before relying on a legal fiction to pull people out of a class definition, because if people can do this, this is going to really undercut the predictability, the stability, the finality of settlement agreements that are so important to everybody in this entire scheme, to plaintiffs, to defendants, to the courts. Because if defendants can't know what they're getting when they enter into an agreement, because a smart lawyer is going to come along and come up with a creative theory for why there's some legal fiction that pulls their clients out of the class, then defendants are never going to be very hesitant to enter into these settlements. It's going to take longer and harder. And I think, honestly, their price is ultimately going to fall. There's going to be less money in ordinary people's pockets. I don't think that is good for anybody involved. And I think really the right way is basically just the way that Judge Griffin has been suggesting, which is just to look at this as an ordinary question of construction, contract says direct and indirect. That's basically all you need to know. So we're asking the court to reverse. Any further questions, Judge Batchelder? No. Judge Bush. All right. Thank you, counsel, for your arguments. Case will be submitted. You may call the next case.